ARTURO RUIZ GUARDIOLA ET AL., Plaintiffs and Appellants, *v.* SEARS ROEBUCK OF PUERTO RICO, INC., ET AL., Defendants and Appellees; ARTURO RUIZ GUARDIOLA ET AL., Plaintiffs and Appellees, *v.* SEARS ROEBUCK OF PUERTO RICO, INC., and LUIS MORALES, Defendants and Appellants.

Nos. R-70-225, R-70-226. Decided September 25, 1972.

*Beverley, Rodríguez, Estrella & Pesquera* for defendants and appellants. *Agrait, Oliveras & Otero* for plaintiffs and appellants.

MR. JUSTICE MARTÍN delivered the opinion of the Court.

The plaintiff spouses,[1] Arturo Ruiz Guardiola and Emma Luz Guardiola, filed an action before the Superior Court, San Juan Part, against defendants,[2] Sears Roebuck of Puerto Rico, Inc. and against the latter's employee, Luis Morales, claiming the payment of the damages which they allegedly sustained as a result of an automobile accident which occurred at the intersection of Highway No. 1 from Caguas to Río Piedras and Highway No. 176 of Cupey Ward of San Juan, on August 28, 1965.

The trial court sustained the claim of plaintiff-spouses, upon concluding that the accident was exclusively due to the guilt and negligence of the codefendant-driver Luis Morales, whose negligence was imputable to the other codefendant Sears Roebuck of Puerto Rico, Inc., who was said driver's employer and owner of the vehicle which he was driving, upon hurling himself to cross a heavy traffic highway without taking the due precautions, especially not having any visibility to the left side; and in view of the fact that it was raining at the time and that the traffic was heavy. Consequently the trial court ordered defendant to pay the plaintiff-

---

[1] Appellants in this case.

[2] Appellants and appellees in this case.

spouses the following amounts for damages: medical expenses and medicines, $2,038.07; loss of income of plaintiff Emma Guardiola Ruiz during the 4 years and 1 month which elapsed from the date on which she quit working until the date on which judgment was rendered, $19,600; sufferings, pains, and anguishes of plaintiff Emma Guardiola Ruiz and her 50% physical disability, $25,000; suffering and mental anguish of plaintiff Arturo Ruiz Guardiola, $4,500, and $4,083 for the loss of the latter's income. The claim of the sons of spouses Ruiz-Guardiola was dismissed because their causes of action had prescribed.[3]

Both parties have requested review against said judgment.

Plaintiffs assign as sole error the fact that the trial court did not grant any compensation whatsoever to plaintiff, Mrs. Ruiz, for the decrease of her earning capacity in view of the resulting 50% disability of her general physiological functions, despite having granted compensation for the loss of income until the date on which judgment was rendered.

Defendants, on their part, assign ten errors committed by the trial court. Three of them concern the determination of negligence, four of them to the amounts of compensation granted, another which involves that a previous and pre-existent condition of plaintiff-spouse was ignored (which in essence is directed to the determination of compensation), another as to the weighing of the collision between the two vehicles which they do not consider to have been sufficiently strong to cause the physical damage suffered by plaintiff, and, the last, resulting from the fact that the court denied a motion for reconsideration filed by defendants.

We agree with the trial court's conclusion in the sense that the accident was exclusively due to the guilt and negli-

---

[3] The determination of prescription as to plaintiffs' sons has not been raised as error.

gence of codefendant-driver while performing duties of his employment with codefendant Sears Roebuck of Puerto Rico, Inc.

We have previously decided that the signal to cross, whether through a mechanical device or from a police officer, is not a command to go, but a qualified permission to proceed according to the provisions of law, as a prudent man would do under such circumstances, which certainly requires to look to both sides before entering the intersection. *Damiani* v. *Donatiu*, 95 P.R.R. 809 (1968); *Pereira* v. *Commonwealth*, 91 P.R.R. 728 (1965); *Briales Aldrich* v. *Torres*, 89 P.R.R. 797 (1964). The errors assigned by defendants in relation to the determination of negligence or the weighing of the collision between the vehicles were not committed.

Let us discuss the challenge made by defendants as to the amount of the damages granted to plaintiffs.

Defendants first point out that the damages granted to Mrs. Ruiz Guardiola on account of the loss of income are speculative, unjust, and in conflict with the evidence presented. It should be clarified that the court did not grant damages to plaintiff for loss of income during the six months following the occurrence of the accident because she admitted that she continued working during that period of time. But it granted damages based on the subsequent 4 years and 1 month which elapsed until the day of the trial.

The specific circumstances of this case having been examined, we understand that the trial court, upon fixing the compensation for said loss of income of Mrs. Ruiz Guardiola, should have taken into consideration the nature of the work which she carried out in view of her physical condition during said period of time that culminated with the date of the trial. Let us see:

It appears from the record that her work was a part-time job as pharmacist to which she devoted *one or not more than four days each month.* (Tr. Ev. p. 20.) (Italics ours.)

In her testimony in the deposition taken September 26, 1968, plaintiff describes her job in the factory in the following manner:

"This gentleman [the owner] has a factory and he asked me to give my name . . . *and is a part-time job very comfortable* because I could do my chores and go once or twice, one or two days each month." (Page 26.) (Italics ours.)

". . . as soon as that stock decreased [the owner] gave me a call 'At your best convenience.'" (Page 27.) (Italics ours.)

". . . my duty was *only to supervise* while they manufactured." (Page 28.) (Italics ours.)

"My job consisted in weighing the tragacanth, that is, the emulsifying agents . . . you pour in the tragacanth, you push a button and the electric beating vanes start to beat that product. After the product becomes incorporated, for about fifteen or twenty minutes, you pour the ipecacuanha tincture that's the only thing it takes . . . . That was my duty and *I sat down to wait for three hours* in order to be able to manufacture. If I felt like going to the house of [the owners], I went there and had a cup of coffee with Mary [the owner's wife], I kept her company. . . ." (Pages 32, 33.) (Italics ours.)

Then, in her testimony during the trial, plaintiff stated the following:

". . . my duty was limited to measure with a measuring device fifty c.c. of fluid ipecacuanha extract, which is the drug that you have to measure, and take some weights; that I did not do it, I *supervised what [two workers] weighed.*" (Tr. Ev. p. 26.) (Italics ours.)

". . . That factory is established in such a manner that *everything is manipulated through keys* . . . And I did not do that but two workers did it. . . ." (Tr. Ev. p. 26.) (Italics ours.)

Plaintiff, Mrs. Ruiz Guardiola, did not even have to drive an automobile to reach her place of work inasmuch as she did not know how to drive, and depended on her husband to take her to the factory. Said fact arises from her own testimony in the above-mentioned deposition at page 31:

"No, I did not drive, my husband is a salesman and I, as this is a work which I could perform with all convenience, I took advantage when he had to go by the route of Vega Alta when he had to go by that place and he left me in the morning and picked me up at eight or nine in the evening."

And as to her limitations for her activities, she summarized them in her testimony before the court in the following manner:

"I am forbidden to perform any work which involves bending down or exerting myself. . . ." (Tr. Ev. p. 14.)

She also mentioned the things which she can perform:

". . . prepare lunch, prepare breakfast and prepare dinner, and put the clothes inside the washing machine and in the drier." (Tr. Ev. pp. 14, 15.)

". . . I can go to mass. When I am feeling well I go . . . . That hour I take out all Sundays from those I can. On Sunday I go to church." (Tr. Ev. p. 18.)

". . . I cannot go to dances because I cannot go to stay for long hours. Even to a meeting for which I have to get up and dress myself, go to a beauty parlor *in that time about four hours pass by;* for then to get into an automobile, reach the meeting, say, 'hello, how are things?' and I leave. The few occasions I go out it must be to relatives' homes where I can go and lie down there to distract my mind for a while." (Tr. Ev. p. 18.) (Italics ours.)

"Q. What are those four hours to which you refer?

"A. It is the maximum period which my body has tolerated with the self-discipline which as time goes by my condition allows me as I try to do a thing." (Tr. Ev. p. 19.)

■ An analysis of plaintiff's own testimony shows that her physical condition was such that it did not prevent her from carrying out the comfortable and limited function of part-time pharmacist in the factory where she worked. Her physical impediment to perform the work, as she described it, does not seem to us to have been supported by the preponderance of the evidence. She did not even have to drive an automobile. Her friendship with the employer and his wife

was such that during her three-hour rest periods which she took during her work she went to the contiguous home of the employer to enjoy his wife's company and a cup of coffee. We do not have any doubt that plaintiff could perform the occasional supervisory job in said factory, especially when from her own testimony it arises that on the occasions in which her friend-employer needed her he would give her a call to come at her "best convenience." It was established that her duties did not require her to remain standing for a long time and that neither any exertion or bending down was required. Plaintiff earned a $400 monthly salary for her part-time job as pharmacist which she performed once or twice each month according to her own testimony. There is no evidence whatsoever that plaintiff used to work in her profession or any other work whatsoever, except the evidence presented as to the part-time work which she performed in the factory of her friends of Emulsión Jiménez. It seems to us that she carried out that work in particular on account of the convenience that it represented. In view of such circumstances, we understand that the trial court erred upon granting her compensation for loss of income in the amount of $19,600, which should be dismissed.

 As to plaintiff's permanent partial disability,[4] the medical expert Dr. Alvarez de Choudens concluded that as a

---

[4] The assessment of damages depends on the attendant circumstances. Therefore what was decided in specific cases cannot be adopted as a fixed rule and compulsory precedent. *Widow of Silva* v. *Auxilio Mutuo, ante,* p. 30; *Goose* v. *Hilton Hotels,* 79 P.R.R. 494 (1956); *Baralt* v. *Báez,* 78 P.R.R. 115 (1955); *Sánchez* v. *Sucn. J. Serrallés,* 53 P.R.R. 77 (1938). The assessment of damages, especially for physical suffering and mental anguish, is a function which rests on the sound discretion of the trier, *Santaella* v. *Licari,* 83 P.R.R. 855 (1961), and entails the purpose of compensating the injured party without the purpose of penalizing the wrong-doer, *Toro* v. *P.R. & American Ins. Co.,* 87 P.R.R. 625 (1963); *Rivera* v. *Rossi,* 64 P.R.R. 683 (1945).

Even more, it has been a reiterated doctrine of this Court that in the exercise of its reviewing powers, it has ample discretion to adopt its own view in the weighing or evaluation of expert testimony and even to reject

result of the accident plaintiff suffers from a discogenic and cervical and lumbar disability which makes it difficult for the symptoms she shows to disappear inasmuch as despite four years of conservative treatment the disease has not disappeared. The aforesaid expert considers that plaintiff's condition has caused a 50% permanent disability of the general functions of her body. She is 45 years old. Since September 1965 she has been under treatment with Dr. José Alvarez de Choudens who diagnosed a strain of the cervical region and another of the lumbosacral region. She has been suffering internal pains with periods of ups and downs and she has had to restructure all of her system of life. The physician's instructions are: not to bend, not to lift or push heavy objects, not to walk or remain- seated for a long period of time, to rest by periods during the day, preferably lying down and to apply daily traction to her neck, not to use pillows and to use an orthopedic corset.

Considering the 50% disability of plaintiff's general physiological functions, according to the testimony of the neurosurgeon Dr. Alvarez de Choudens, which affects her ability for work, and considering besides the sufferings and anguish which she has suffered and continues to suffer, we arrive at the conclusion that the trial court erred in granting the amount of $25,000 for such concepts, and we increase said amount to $40,000. Although plaintiff had and still has a congenital sacralization condition, it was not shown that the said preexisting condition was the cause of the permanent partial disability which she now suffers. And, despite the fact that plaintiff was involved in an automobile accident of minor importance subsequent to the accident which gave rise to this

it even though it turns out to be technically correct. *Valldejuli Rodríguez* v. *Aqueduct and Sewer Authority,* 99 P.R.R. 890 (1971) ; *Prieto* v. *Maryland Casualty Co.,* 98 P.R.R. 583 (1970) ; *Concepción Guzmán* v. *Water Resources Auth.,* 92 P.R.R. 473 (1965).

suit, it could not be shown either that, as a result of said accident, her physical condition was aggravated.

We see no reason to alter the other amounts granted by the trial court and they are affirmed.

Finally a study of the error raised by defendants concerning the determination of the trial court in denying the motion for reconsideration reveals to us that the same lacks merit.

The judgment will be modified in accordance with the pronouncements of this opinion, and as thus modified it will be affirmed.

Mr. Justice Martínez Muñoz took no part in the decision of this case.